**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**FELIX SAGUN,**

        **Plaintiff,**

        v.

**DELTA AIR LINES, INC.**

        **Defendant.**

Civil Action No. 16-8881 (ES) (JAD)

MEMORANDUM OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Delta Air Lines, Inc.'s ("Defendant") unopposed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (D.E. No. 24). The Court has subject-matter jurisdiction under 28 U.S.C. § 1331. The Court has considered the relevant submissions[1] and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's motion is GRANTED.

*Background*.[2] Plaintiff Felix Sagun ("Plaintiff") was employed by Defendant "as a baggage handler in 2006 at the John F. Kennedy International Airport." (SMF ¶ 11). "He later transferred to the Newark Liberty International Airport" where he maintained the title of baggage handler. (*Id.* ¶¶ 11 & 13). Plaintiff, who is Filipino, "testified he was one of seven Filipino

---

[1] (D.E. No. 1, Complaint ("Compl."); D.E. No. 24–1, Defendant's Brief in Support of Motion for Summary Judgment ("Def. Br."); D.E. No. 24-2, Statement of Undisputed Material Facts Pursuant to Fed. R. Civ. P. 56 ("SMF")).

[2] The Court derives the factual background from the Complaint and Defendant's Statement of Material Facts Pursuant to Local Civil Rule 56.1. *See* L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment"); *Ruth v. Selective Ins. Co. of Am.*, No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017) ("[A] movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts . . . receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion.").

employees working for Delta at the Newark Airport." (*Id.* ¶ 18). His "typical shift lasted from 6:00 p.m. to 12:30 a.m., but he regularly swapped shifts with co-workers." (*Id.* ¶ 15).

Plaintiff alleges that one of his supervisors, David Houser ("Houser"), discriminated against him on two separate occasions: (i) "Houser[] denied [Plaintiff] opportunities to use computers" in 2010 and (ii) Houser assigned Plaintiff heavier workloads in 2010 and 2012. (*See* SMF ¶ 16; D.E. No. 1-1; D.E. No. 24-5 at 21–43[3] ("Sagun Dep. Vol. II") 25:13–47:1). Plaintiff testified that Houser is the only supervisor that discriminated against him. (Sagun Dep. Vol. II 51:17–21).

Throughout his employment with Defendant, Plaintiff was cited for several disciplinary violations, including "written warnings for attendance on March 19, 2010, November 17, 2011, and February 26, 2012; a Corrective Action Notice for a safety violation on August 1, 2013; a Written Coaching for attendance on December 4, 2013; and a Final Corrective Action for a seatbelt violation on October 8, 2014." (*Id.* ¶ 39; D.E. No. 24-5 at 55–65). Plaintiff does not dispute the basis for his Final Warning and "admits he understood further violations would result in termination." (SMF ¶ 40; D.E. No. 24-4 at 4–68, ("Sagun Dep. Vol. I") 179:21–180:16).

On February 22, 2015, Plaintiff's station manager, Stacey McCarthy ("McCarthy"), discovered that the door to the de-icing room had been damaged. (SMF ¶¶ 17 & 23). McCarthy reviewed the "video footage from February 21, 2015, at 11:00 p.m. through February 22, 2015, at 4:30 a.m. . . . . [which] showed [Plaintiff] kicking the door on February 22, 2015, at 12:38 a.m." (*Id.* ¶ 24–26). Several other managers reviewed the video footage and identified Plaintiff. (*Id.* ¶ 27; D.E. No. 24-4 at 3).

After returning to work from a trip overseas on March 11, 2015, Plaintiff met with

---

[3] References to page numbers of documents on the Docket refer to the CM/ECF pagination generated on the upper-right hand corner.

McCarthy and one of the Operations Service Managers, Jerry Dorcely ("Dorcely") "to discuss the damage to the door." (SMF ¶¶ 16, 28 & 29). McCarthy and Dorcely showed Plaintiff the video footage several times, and Plaintiff admitted that "it was him on the video." (*Id.* ¶¶ 31 & 32). As a result, Plaintiff was suspended and eventually McCarthy "made the decision to terminate" him for "kicking and damaging the door to the de-icing room." (*Id.* ¶¶ 33, 41 & 43). She notified him of his termination of employment and the termination became effective on April 9, 2015. (*Id.* ¶ 43).

On August 13, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated due to race discrimination in violation of Title VII of the Civil Rights Act. (*Id.* ¶ 46; D.E. No. 1-1). On November 30, 2016, Plaintiff filed the instant action against Defendant, asserting the same race discrimination claim. (*See* Compl.). Defendant has moved for summary judgment, arguing that Plaintiff has failed to establish a prima facie case of race discrimination under Title VII. (*See* Def. Br. at 12). To date, Plaintiff has not opposed the motion.

***Standard of Review***. Where, as here, a summary-judgment motion is unopposed, Federal Rule of Civil Procedure 56(e)(3) still requires the Court to determine whether summary judgment is proper. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Federal Rule of Civil Procedure 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." "A 'genuine' dispute of 'material' fact exists where a reasonable jury's review of the evidence could result in 'a verdict for the non-moving party' or where such fact might otherwise affect the disposition of the litigation." *Ruth v. Selective Ins. Co. of Am.*, No. 15-2616, 2017 WL 592146, at *2 (D.N.J. Feb. 14, 2017) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a party submits a properly filed and supported summary-judgment motion that goes unopposed, "it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld, although the Court has discretion to do so if unsatisfied that the law and facts point to judgment as a matter of law." *Id.* at *3.

*Discussion*. Defendant argues that the Court must grant summary judgment because Plaintiff has failed to establish a prima facie case of discrimination under Title VII. (Def. Br. at 12). Particularly, Defendant contends that Plaintiff cannot establish an inference of discrimination because he "has no evidence of any comments to suggest unlawful bias. Nor is there any evidence of unfair treatment against himself, or other Filipino employees." (*Id.* at 16). The Court agrees.

"A plaintiff must establish a prima facie case of discrimination in order to sustain claims under Title VII." *Parikh v. UPS*, 491 F. App'x 303, 307 (3d Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). In order to establish a prima facie case of discrimination, the plaintiff must show that "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglass*, 411 U.S. at 802; *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

With respect to the fourth element, "[a]n inference of discrimination could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by supervisors suggesting racial animus." *Houston v. Dialysis Clinic, Inc.*, No. 13-4461, 2015 WL

3935104, *4 (D.N.J. June 26, 2015); *see also Golod v. Bank of America Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010). "More specifically, when presenting comparator evidence, on summary judgment, a plaintiff must prove that she is 'similarly situated' to her comparators and that these employees have been treated differently or favorably by their employer." *Houston*, 2015 WL 3935104, at *4. However, "not every insult, slight, or unpleasantness gives rise to a valid Title VII claim." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1297 (3d Cir. 1997).

Here, Plaintiff asserts that he was fired because he is Filipino. (*See generally* Compl.; SMF ¶ 46). For support, Plaintiff asserts that Houser discriminated against him in 2010 and 2012. (D.E. No. 1-1). Particularly, Plaintiff asserts that Houser denied him the use of a computer in 2010 and that Houser assigned Plaintiff heavier workloads in 2010 and 2012. (*See id.*; Sagun Dep. Vol. II 25:13–47:1). However, Plaintiff has failed to provide any competent evidence that would support an inference of discrimination.

First, the alleged instances of discrimination at the hands of Houser are completely detached from Plaintiff's termination, because i) these incidents occurred five years (computer denial) and almost three years (uneven workloads) before his 2015 termination,[4] and ii) Houser had no involvement in the decision to terminate Plaintiff's employment. (*See* SMF ¶¶ 16, 43–44; *see also* D.E. No. 24-4 at 3). Courts routinely hold that discrimination cannot be inferred from events occurring years before an adverse action. *See, e.g.*, *Ade v. KidsPeace Corp.*, 401 Fed. App'x 697, 704 (3d Cir. 2010) (finding that a reasonable jury could not infer racial discrimination from two discriminatory remarks referenced by the plaintiff, where the remarks were "made nearly two

---

[4] Relatedly, because Plaintiff filed his discrimination claim with the EEOC on August 13, 2015, (SMF ¶ 46; D.E. No. 1-1), to the extent Plaintiff raises separate Title VII claims based on the events from 2010 and 2012, such claims are barred because Plaintiff did not file a timely charge. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104–05 (2002) (interpreting 42 U.S.C. § 2000e-5(e)(1) to mean that claims brought under Title VII of the Civil Rights Act of 1964 for employment discrimination must first be filed with the Equal Employment Opportunity Commission either 180 or 300 days after an alleged unlawful employment practice occurred).

years prior to [the plaintiff's] termination, and . . . [one of the declarants] never maintained any supervisory authority over [the plaintiff] and was not responsible for the decision to terminate him"); *Davis v. Cleary*, No. 09-0925, 2011 WL 4435697, at *4 (D.N.J. Sept. 22, 2011) (finding that comments by non-decisionmakers were insufficient to support "an inference of racial discrimination, particularly considering the incidents in question occurred more than a year before the alleged discrimination and did not involve . . . the relevant decisionmakers").

Second, and more fundamentally, Plaintiff has simply failed to provide any evidence that Houser discriminated against Plaintiff because of Plaintiff's race. With respect to the denial of computer use, Plaintiff testified that Houser denied him and another Filipino employee the use of a computer to look at the news, yet Houser permitted another co-worker to use the computer for that purpose. (Sagun Dep. Vol II 25:25–30:22). But Plaintiff testified that this alleged discrimination occurred only one time, and that he was allowed to use the computer on all other occasions. (*Id.* 27:12–18). Further, Plaintiff could not even identify the race of the co-worker allegedly treated more favorably. (*Id.* 27:9–12).

Similarly, there is no evidence to suggest Plaintiff's race had any bearing on the alleged unfair distribution of work. Plaintiff alleges that Houser assigned him heavier workloads during 2010 and 2012, and that he complained to fellow co-workers. (Sagun Dep. Vol. II 30:1–36:6, 41:9–46:4). But aside from this testimony, Plaintiff has failed to offer any other evidence to support these allegations. In fact, Plaintiff testified during his deposition that Houser also assigned heavier workloads to other Caucasian and African American employees. (Sagun Dep. Vol. II 34:6–35:19, 44:18–45:24). Moreover, Plaintiff attributed this alleged uneven distribution of work to "favoritism," not racial discrimination. (*See* Sagun Dep. Vol. II 34:1–4); *see also Rich v. Verizon New Jersey Inc.*, No. 16-1895, 2017 WL 6314110, at *24 (D.N.J. Dec. 11, 2017) (stating

that general allegations of favorable treatment are insufficient to establish an inference of discrimination under a Title VII claim).

In short, because Plaintiff has failed to make a prima facie case of employment discrimination under Title VII, Defendant is entitled to judgment as a matter of law. *See Jones v. School District of Philadelphia*, 198 F.3d 403 (3d Cir. 1999). Consequently, the Court grants Defendant's motion for summary judgment.[5]

***Conclusion***. For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[5] Even assuming Plaintiff has established a prima facie case of employment discrimination, his claim fails because the undisputed evidence shows that Defendant terminated Plaintiff for a lawful reason. It is undisputed that Plaintiff was terminated because video footage appeared to show Plaintiff kicking the door to the de-icing room. (*See* SMF ¶¶ 23–26, 29–39, 41). Kicking and damaging the door to the de-icing room violated Defendant's workplace violence prevention conduct policy. (*See* D.E. No. 24-5 at 3 (stating that "acts or threats of sabotage or vandalism to [Delta] property" constitute a zero-tolerance violation of the policy)). Plaintiff testified that he was familiar with Defendant's policy. (Sagun Dep. Vol. I 113:10–14, 114:4–20). Further, the evidence shows that Plaintiff had been subject to various disciplinary actions, including a "Final Corrective Action for a seatbelt violation on October 8, 2014." (SMF ¶¶ 39 & 40). Plaintiff also testified that he understood further violations would result in termination. (Sagun Dep. Vol I 179:21–180:16). Thus, the uncontroverted evidence shows that Defendant terminated Plaintiff for a non-discriminatory, lawful reason. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993).

By contrast, Plaintiff provides nothing that would give rise to an inference that Defendant's reason for terminating Plaintiff was a pretext for race discrimination. *See Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). Indeed, Plaintiff has not even accused either McCarthy or Dorcely, who made the decision to terminate Plaintiff, of bias or discriminatory animus. (*See generally* Compl.; Sagun Dep. Vol. I; Sagun Dep. Vol. II). Rather, as noted earlier he only points to alleged bias by Houser in 2010 and 2012, but Houser had no say in Plaintiff's termination. Thus, even assuming that Defendant incorrectly blamed Plaintiff for the damage to the door of the de-icing room, Plaintiff's discrimination claim still fails. *See, e.g.*, *Watson v. Se. Pa. Transp. Auth.*, 207 F.3d 207, 222 (3d Cir. 2000) (recognizing that, so long as a discriminatory animus is not shown, an employer is permitted to "take an adverse employment action for a reason that is not 'true' in the sense that it is not objectively correct").